**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------X

MAYLINE E. BORRERO FERNANDEZ,

                      Plaintiff,

     -against-

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.

-------------------------------------------------------X

**REPORT AND RECOMMENDATION**

16 Civ. 4533 (NSR) (PED)

## I.     INTRODUCTION

Plaintiff Mayline E. Borrero Fernandez ("Plaintiff," or "Claimant") brings this action pursuant to 42 U.S.C. § 405(g) challenging the decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") denying Plaintiff's application for social security income ("SSI"). Dkt. 2. The matter is before me pursuant to an Order of Reference entered June 23, 2016. Dkt. 7. Presently before this Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, Dkts. 10 (Defendant's motion), 11 (Defendant's memorandum of law in support), 13 (Plaintiff's motion).

For the reasons set forth below, I respectfully recommend that Defendant's motion for judgment on the pleadings be **GRANTED** and Plaintiff's motion for judgment on the pleadings be **DENIED.**

## II.     BACKGROUND

The following facts are taken from the administrative record ("R.") of the Social Security Administration. Dkt. 9.

## A. Application History

On December 12, 2012, Plaintiff filed a Title XVI application for supplemental security income ("SSI"). R. 180-88. In her application, Plaintiff alleged disability beginning on January 1, 2011. R. 180. On April 18, 2013, Plaintiff's Title XVI claim was initially denied. R. 106-111. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") on May 10, 2013. R. 119-21. On July 9, 2014, the ALJ, Marissa Ann Pizzuto, held a hearing in Bronx, New York. R. 83-92. At the hearing, Plaintiff's representative amended the alleged onset date to the date of the filing on December 12, 2012. R. 85. On September 30, 2014, the ALJ issued a decision denying Plaintiff's application. R. 12-14. The ALJ's decision became the Commissioner's final decision on April 29, 2016 when the Appeals Council denied Plaintiff's request for review. R. 1-11. Plaintiff filed this action on June 15, 2016. Dkt. 2.

Plaintiff was born on August 3, 1982. R. 180. Plaintiff alleges that she is disabled because of major depressive disorder, post-traumatic stress, anxiety, depressive moods, borderline personality disorder and other mental illness. Dkt. 2. The period at issue is from December 12, 2012, the date of her filing[1] and September 30, 2014, the date of the ALJ's decision.

## B. Medical History

### 1. Before the relevant period

#### a. 2010

In the Treating Physician's Wellness Report, dated January 13, 2010, Dr. Leacroft Green

---

[1]        Plaintiff applied for SSI benefits, 42 U.S.C. § 1381, *et seq.*, as distinguished from disability insurance benefits ("DIB"), 42 U.S.C. § 423, *et seq.* The standard for disability is the same under both statutory schemes, *compare* 42 U.S.C. §§ 423(d)(1)(A) *with* 1382c(a)(3)(A), but SSI benefits – if awarded – accrue only from the date claimant filed her application. 20 C.F.R. § 416.330.

diagnosed profound loss of hearing in the right ear and dizziness, recommended a behind-the-ear hearing aid, and opined that Plaintiff was unable to work "due to disability until receives hearing aide." R. 412-13.

### b. 2011

In a September 26, 2011 letter, Dr. Green, an otolaryngologist, wrote that Plaintiff's audio test and a magnetic resonance imaging of her brain showed asymmetric sensorineural hearing loss, which, in Dr. Green's opinion, rendered her unable to work. R. 376.

### c. 2012

In a May 11, 2012 letter, Dr. Fernando Mejia, a psychiatrist with Urban Health Plan, Inc. ("Urban Health"), wrote that he treated Plaintiff for "various medical conditions that are disabling," such as depression and borderline personality disorder, including frequent tearfulness, poor appetite and sleep, auditory and visual hallucinations, and a depressed and anxious mood. R. 389. Dr. Mejia provided medication management, and Jean Weille, a social worker ("SW"), provided psychotherapy. R. 389. Dr. Mejia requested that Plaintiff be exempted from the "public assistance work requirement" due to her conditions. *Id.*

On June 29, 2012, Dr. Mejia completed a psychiatric report, stating that he and SW Weille had treated Plaintiff on a monthly basis since January 2012, diagnosing borderline personality disorder, dysthymia, and finding Plaintiff with a global assessment of functioning ("GAF") score of 56.3.[2] R. 271. Dr. Mejia reported that Plaintiff's symptoms had improved,

---

[2] The Global Assessment of Functioning ("GAF") is a numeric scale used by mental health clinicians and physicians to rate subjectively the social, occupational, and psychological functioning of an individual. A GAF score of 51 to 60 is indicative of moderate symptoms (*e.g.*, flat affect, circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders* ("DSM-IV") 32, 24 (4th ed. text rev. 2000).

with very few side effects, since she started taking Mirtazapine. R. 271. Dr. Mejia found that Plaintiff was "seriously limited, but not precluded" from performing unskilled, semi-skilled, and skilled work, as well as performing particular types of jobs. R. 273-74.

On July 26, 2012, Sandy Colonna, an audiologist, completed a hearing impairment questionnaire and performed an audiogram that revealed Plaintiff had normal hearing and excellent speech discrimination in Plaintiff's left ear, but profound hearing loss in her right ear. R. 475, 478. Ms. Colonna noted symptoms consisting of ear pain, vertigo, and dizziness, and that would "impact[] her activities when walking and traveling," because "the hearing loss on the right side has caused balance issues." R. 476-77. Ms. Colonna assessed that Plaintiff required more supervision at work than an unimpaired worker, could not work with power machines, could not operate a motor vehicle, could not travel by bus independently, had symptoms that were frequently severe enough to interfere with attention and concentration, and could never lift/carry ten pounds, stoop (bend), crouch/squat, or tolerate even a low stress job. R. 476-77.

On August 8, 2012, Dr. Samuel DeLeon, a pulmonologist, completed a Pulmonary Residual Functional Capacity Questionnaire, noting that Plaintiff's pulmonary function test revealed that Plaintiff had a predicted one-second forced vital capacity ("FEV1") of 3.13 mL, a pre-bronchodilator FEV1 of 2.96 mL, and a post-bronchodilator FEV1 of 2.99 mL (*i.e.*, her FEV1 values were about 95% of their predicted value). R. 483. Dr. DeLeon diagnosed Plaintiff with asthma and noted symptoms consisting of coughing and shortness of breath. R. 483. Dr. DeLeon opined that Plaintiff would have three to four asthma attacks per year that would incapacitate her for about three to four days each time, causing her to be incapable of even low stress jobs, because of absences from work about two days per month due to her impairment or treatment. R. 483-84. Dr. DeLeon further opined that Plaintiff could walk for three to four

blocks at a time, sit for at least six hours and stand and/or walk for about four hours during the course of an eight-hour workday, lift and carry twenty pounds occasionally and ten pounds frequently, and occasionally twist, stoop (bend), crouch/squat, climb ladders, and climb stairs. R. 484-85. Dr. DeLeon also opined that Plaintiff should avoid temperature extremes, high humidity, wetness, cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. R. 485. Dr. DeLeon prescribed Albuterol, Flovent, and Prednisone to address Plaintiff's symptoms. R. 484.

On August 21, 2012, Dr. Mejia completed a Wellness Plan Report and diagnosed Plaintiff with depression and borderline personality disorder because Plaintiff's symptoms consisted of depressed mood, poor sleep, anxiety, and auditory and visual hallucinations. R. 416. Dr. Mejia opined that Plaintiff was unable to work for at least twelve months. R. 417.

On August 21 and October 19, 2012, Dr. Mejia examinations of Plaintiff revealed that she was "doing good" and that she was cooperative and had good attention, clear and spontaneous speech, intact thought processes, unremarkable thought content, an uneasy and anxious mood, labile affect, good insight and judgment, and intact immediate, recent, and remote memory skills. R. 570, 579. Dr. Mejia diagnosed borderline personality disorder, dysthymia, and assessed a GAF score of 56. R. 570, 579. He prescribed Mirtazapine for Plaintiff's depression. R. 570, 579.

### 2. During the relevant period

#### a. December 12, 2012 through 2013

In December 2012, Plaintiff reported to Dr. Mejia that she was nervous, restless, unable to sleep, and not eating well. R. 562. In February 2013, Plaintiff reported to Dr. Mejia that she was feeling better and that her medication was helping her feel better. R. 550. At the December

2012 and February 2013 examinations, Dr. Mejia observed that Plaintiff was cooperative and had good attention, clear and spontaneous speech, intact thought processes, unremarkable thought content, an uneasy and anxious mood, labile affect, good insight and judgment, and intact immediate, recent, and remote memory skills. R. 550, 562. Dr. Mejia diagnosed borderline personality disorder, dysthymia and assessed a GAF score of 56. R. 550, 562. He prescribed Mirtazapine and hydroxyzine hydrochloride for Plaintiff's anxiety and depression. R. 551, 562-63.

On April 16, 2013, Dr. Nobel, a state agency psychological consultant, completed a Psychiatric Review Technique, Physical Residual Functional Capacity Assessment, and Mental Residual Functional Capacity Assessment. Dr. Nobel opined that Plaintiff's anxiety-related and substance addiction disorders did not satisfy all of the specified criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). R. 97-103; *see* 20 C.F.R. §§ 404.1525(d), 416.925(d). Dr. Nobel assessed mild restrictions in Plaintiff's ability to perform activities of daily living and maintain social functioning, and moderate difficulties in her abilities to maintain concentration, persistence, or pace, and no episodes of decompensation. R. 98. Specifically, Dr. Nobel assessed moderate limitations in Plaintiff's ability to understand, remember and carry out detailed instructions, complete a normal workday and work week without interruptions from psychologically-based symptoms, perform at a consistent pace, interact appropriately with the general public, and respond to changes in the work setting. R. 102-103. Dr. Nobel opined that Plaintiff could perform simple work with the foregoing limitations. R. 103.

On June 7, 2013, Dr. Mejia completed a medical source statement, assessing that Plaintiff had moderate limitations in her ability to understand, remember and carry out simple

instructions, make judgments on simple work-related decisions, and interact appropriately with supervisors and the general public. R. 277-78. He also assessed marked limitations in the areas of interacting with coworkers and responding appropriately to usual work situations and changes in a routine work setting. R. 278. Dr. Mejia further opined that Plaintiff's depressive and personality disorders affected her ability to socialize and interact with others on a prolonged basis in stressful situations, and that she was very easily overwhelmed emotionally, frequently tearful, easily agitated, and needed to spend a lot of time alone. R. 277-78.

### b. 2014

On January 8, 2014, Dr. Rachana Chowlera completed a General Medical Report, noting that he had first seen Plaintiff in August 2009 and mostly recently on August 6, 2014, when Plaintiff had complained of back pain and hand pain with tingling, numbness and weakness during the previous six months. R. 628. Dr. Chowlera diagnosed Plaintiff with back pain and hand pain and found "slight tenderness mid back, mild pain with extension, mild pain with flexion but no pain with lateral bending; negative [straight leg raising] test," R. 629, but Dr. Chowlera did not know whether Plaintiff's symptoms could be expected to last at least twelve months. R. 630. Dr. Chowlera also completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical), writing "not assessed" for each of the work-related activities addressed in that form, explaining that Plaintiff was in the process of being evaluated. R. 631-36.

On June 20, 2014, Dr. Mejia evaluated Plaintiff and reported that her symptoms had worsened and that she was worried about her upcoming court appointment for SSI. R. 642. On examination, Dr. Mejia observed that Plaintiff was cooperative and had good attention, clear and spontaneous speech, intact thought processes, unremarkable thought content, a sad and anxious

mood and constricted affect, good insight and judgment, and intact immediate, recent, and remote memory skills. R. 641-42. Dr. Mejia assessed major depressive disorder, recurrent, moderate, and borderline personality disorder and a GAF score of 55 R. 642. He prescribed Mirtazapine and hydroxyzine hydrochloride for Plaintiff's depression and anxiety R. 642.

### 3. After the relevant period

After the ALJ's September 30, 2014 decision, the Appeals Council received additional evidence from the Plaintiff, R. 6, including a December 12, 2012 notice from Maricell Rodriguez, a caseworker with Federation Employment & Guidance Services WeCare ("F.E.G.S.") to HRA, stating that Plaintiff was exempt from the work activities of the Department of Social Service's temporary assistance program due to an unspecified medical issue, R. 643-661, and progress notes from October 21, 2013 through October 21, 2014, showing that Dr. Mejia treated Plaintiff for complaints of depressive and borderline personality disorders, R. 646-47, 652-57. Dr. Mejia's progress notes from October 21, 2013, through October 21, 2014 reveal that Plaintiff had an anxious, uneasy or sad mood, labile or constricted affect, cooperative attitude, good attention, clear speech, intact thought processes, unremarkable thought content, and good insight and judgment, and no memory deficits were noted. R. 646-47, 654, 656. On those dates, Dr. Mejia assessed GAFs of either 55 or 56, and diagnosed major depressive disorder, recurrent, moderate, and borderline personality disorder. R. 646-47, 654, 656. In August 2014 and October 2014, Dr. Mejia continued Plaintiff's prescriptions for Mirtazapine and hydroxyzine hydrochloride, to treat her depression and anxiety. R. 647, 652.

### 4. Consultative Examinations

#### a. Consultative Internal Medicine Examination

On March 19, 2013, Dr. Catherine Pelczar-Wissner conducted a consultative internal

medicine examination of Plaintiff. R. 601-04. Plaintiff reported a history of asthma with three to four exacerbations per year, though she had not been hospitalized on account of her asthma for many years and could walk three to four blocks without getting short of breath. R. 601. The consultative examiner noted that Plaintiff showered, bathed, dressed herself, cooked, cleaned, and watched television, and also shopped with some help, but that her mother did the laundry. R. 602. On examination, the consultative examiner found that Plaintiff's gait and stance were normal, and that she could perform a full squat. R. 602. She also had no difficulty changing for the examination, getting on and off the examination table, or rising from a seated position. *Id.* Plaintiff had some scarring in her right eardrum and could not hear a whisper from five feet away with her right ear. R. 603. Plaintiff had normal muscle strength, range of motion, reflexes and sensations throughout her joints and extremities, full range of motion in her cervical spine and lumbar spine, and intact hand and finger dexterity and full grip strength, bilaterally. R. 603. Dr. Pelczar-Wissner diagnosed asthma, depression, and right ear hearing loss with occasional dizziness specifying that Plaintiff should avoid smoke, dust, known respiratory irritants, unsecured heights, and climbing ladders. R. 604.

### b. Consultative Psychiatric Examination

On March 19, 2013, Dr. David Mahony, a psychologist, performed a consultative psychiatric evaluation of the Plaintiff. R. 597-600. Plaintiff reported completing the ninth grade in Puerto Rico, living in New York for one year with her two children, and traveling to the evaluation on her own using the subway. *Id.* Plaintiff stated that she was not currently working because of her hearing problems, and complained of insomnia, depression secondary to her hearing problems, feelings of hopelessness, loss of interest, feelings of worthlessness, concentration difficulties, and social withdrawal. R. 597-98. Plaintiff also reported being

9

abused as a child and hearing voices. R. 598. Dr. Mahony noted that Plaintiff had cognitive deficits secondary to her limited education, and difficulty learning new material. R. 598. On examination, Plaintiff was cooperative, made appropriate eye contact, had fluent and clear speech, adequate expressive and receptive language, and coherent and goal-directed thought processes, exhibited depressed affect, dysthymic mood. R. 598-99. Dr. Mahony assessed a mild limitation in her ability to maintain attention, concentration and a regular schedule, learn new tasks, perform complex tasks, make appropriate decisions, relate to others, and deal with stress. *Id.* However, Dr. Mahony assessed no limitations in Plaintiff's ability to follow and understand simple directions and instructions, and to independently perform simple tasks. R. 599. Dr. Mahony opined that Plaintiff's psychiatric problems did not appear to interfere with her daily functioning and diagnosed major depressive disorder and anxiety disorder, not otherwise specified. *Id.*

### C. Hearing Testimony

On July 9, 2014, Plaintiff appeared before ALJ Marissa Ann Pizzuto in Bronx, New York, represented by a non-attorney representative of the Disability Services Program, Ufoma Abamwa. R. 83-92. Plaintiff testified that she lives with her two children who are nine and eleven years old. R. 89.

Plaintiff testified that she has not been able to work for several years because she is always dizzy, has asthma every day, suffers from depression, and feels very anxious all the time. R. 87. Plaintiff testified that she does not take any medication for her dizziness and her past treatment has not helped with her dizziness. R. 87. Plaintiff testified that her dizziness is getting worse and has caused her to fall at home when she stands up quickly. R. 88.

Plaintiff testified that she uses hearing aids in both ears. R. 88. Plaintiff testified that she

did not use her hearing aid on the way to the hearing because she was travelling by herself on the train and the hearing aids would have made her more dizzy, caused a headache, and hurt her eyes. R. 88. Plaintiff testified that she had surgery in her ear twice for her hearing loss and only really hears from her left ear. R. 91.

Plaintiff testified that her depression and anxiety medications have helped her symptoms but have not cured her. R. 88-89. Plaintiff testified that she is seeing a psychiatrist every two months because he prescribed medication and a therapist, who she sees every two weeks. R. 89. Plaintiff testified that her anxiety causes her to lose sleep, feel itchy all over her body, overthink, and walk around the house all day. R. 89. Plaintiff testified that she has so much anxiety that she plans on asking her doctor to increase the dosage of her medication. R. 89.

Plaintiff testified that she takes medication for her asthma and uses a machine at home in the morning and at night, three times a day. R. 89.

## III.    THE ALJ'S DECISION

The ALJ issued a decision on September 30, 2014 following the standard five-step inquiry used for determining disability. R. 18-28. In the first step of the inquiry, the ALJ determined that Plaintiff had not performed substantial gainful activity since December 12, 2012. R. 20.

At step two, the ALJ next found that Plaintiff's medical issues — asthma, right side hearing loss and depression — rose to the level of "severe." R. 20.

At step three, further considering the medical severity of Plaintiff's impairments, the ALJ decided that Plaintiff did not meet or medically equal the "Appendix 1" impairments, which compel a finding of disability. R. 20.

In particular, the ALJ found that "the claimant's asthma does not satisfy any of the

criteria in Listing 3.03 for asthma," because "she has not had asthma attacks occurring at leat once every two months or at least six times a year. Further, there are no objective findings that the claimant's asthma would satisfy the criteria in Listing 3.02 for chronic pulmonary insufficiency; on pulmonary function test, the claimant had a Forced Vital Capacity (FEV1) of 2.96 (Pre-bronchodilator) and 2.99 (Post-bronchodilator)." R. 20-21. Next, the ALJ found that "there are no objective medical findings to support the claimant's right side hearing loss would satisfy any of the criteria in Listing 2.10 for hearing loss not treated with cochlear implantation. R. 21.

Following the physical impairment findings, the ALJ found that the severity of the claimant's mental impairments did not meet or medically equal the criteria of listing 12.04. R. 21-22. Listing 12.04 details the level of severity that a claimant must show to prove the claimant's mental impairment rises to the level of an affective disorder. Paragraph B of Listing 12.04 of Appendix 1 to 20 C.F.R. Part 404, Subpart P, requires that the mental impairments result "in at least two of the following: [1] marked restriction of activities of daily living; [2] marked difficulties in maintaining social functioning; [3] marked difficulties in maintaining concentration, persistence, or pace; or [4] repeated episodes of decompensation, each of extended duration." *Id.* The ALJ noted that a "marked limitation" is defined as one that is more moderate but less than extreme." R. 21. Additionally, the phrase "repeated episodes of decompensation, each of extended duration," requires that the claimant have "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." R. 21.

Paragraph C of Listing 12.04 requires that the claimant show a "[m]edically documented history of a chronic affective disorder of at least two years' duration that has caused more than a minimal limitation of ability to do basic work activities," plus one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

Appendix 1, Listing 12.04(C).

The ALJ found that the evidence did not establish the presence of "paragraph C" criteria because the claimant "has not had any repeated episodes of decompensation, each of extended duration." R. 22. In determining whether Plaintiff met the criteria of paragraph B, the ALJ found that Plaintiff's functional limitations consisted of "mild restriction" in activities of daily living, "mild difficulties" in social functioning, and "moderate difficulties" in sustaining concentration, persistence and pace. R. 21. "As for episodes of decompensation," the ALJ found that "the claimant has experienced no episodes of decompensation, which have been of extended duration." R. 21-22.

Before moving to step four, the ALJ noted that the limitations in paragraph B are used to rate the "severity of mental impairments at steps 2 and 3 of the sequential evaluation process." R. 23. The ALJ further observed that the mental residual functional capacity assessment used at steps four and five requires "a more detailed assessment" involving itemization of the "various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments. (SSR 96-8p)." R. 22.

At step four, the ALJ considered "the entire record" and made a finding about Plaintiff's residual functional capacity. R. 22. The ALJ found that the claimant retained the residual functional capacity to perform "light work as defined in 20 CFR 416.967(b) but she requires a workplace with no temperate extremes, occasional exposure to fumes and gases, no climbing

ladders/ropes/scaffolds, occasional balancing, and performing simple 1-2 step tasks with occasional public contact." R. 22. In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence…" R. 22.

The ALJ found that the claimant's medically determinable impairments "could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision." R. 23. In making this determination, the ALJ noted that Plaintiff would complain of "chest tightness, shortness of breath and coughing for two days. However, the physical examination performed at the time showed the claimant's lungs were clear to auscultation with good air entry bilaterally and with no wheezes, rales or rhonchi." R. 23 (citations omitted). Later, the ALJ noted that Plaintiff complained of back pain and right hand pain with tingling, numbness and weakness for six months, yet her physical examination showed only slight tenderness in her mid-back, mild pain with extension, mild pain with flexion and no pain with bending. R. 24. With regard to Plaintiff's mental impairment, the ALJ noted that Plaintiff's treatment notes showed the although Plaintiff has had episodes depressed and anxious moods, episodes of difficulty sleeping, and bereavement of the deaths of certain family members, "the mental status examination performed throughout 2012 and 2013 were generally within normal limitations showing good attention and memory skills, good insight and judgment, cooperative attitude, appropriate and full range affect, clear and spontaneous speech, normal psychomotor activity, intact thought process, unremarkable thought content, no perceptual disorders, and no suicidal ideation." R. 24.

In making the residual functional capacity determination, the ALJ also considered: (i) the

treatment notes and opinions from the treating pulmonologist, Dr. Samuel DeLeon; (ii) the treatment notes and opinions from ENT specialist, Dr. Green of the Bronx Ear, Nose and Throat Association; (iii) the treatment notes and opinion of a physician at Urban Health Plan, Dr. Rachana Chowlera; (iv) the treatment record and opinion of consultative examiner, Dr. Catherine Pelczar-Wissner; (v) the treatment records and opinions of treating psychiatrist, Dr. Fernando Mejia of Urban Health Plan; (vi) the treatment records and opinions of consultative psychiatric examiner, Dr. David Mahony; and (vii) the treatment records and opinions of audiologist, Sandy Colonna. R. 22-28. The ALJ then turned to evaluating the medical opinion evidence. First, the ALJ decided that he would not "give significant weight" to the Hearing Impairment Functional Capacity Questionnaire from audiologist, Dr. Colonna, because "the medical evidence does not support such a restrictive assessment." R. 24. Second, the ALJ then awarded little weight to both of the reports from Plaintiff's treating psychiatrist, Dr. Mejia because "they are not consistent with the treatment notes and are not supported by the findings from the mental status examinations, which are generally within normal limitations." R. 25. Third, the ALJ awarded "little weight" to Dr. Green's opinion that Plaintiff is unable to work due to hearing loss because "the issue of disability is reserved to the Administration and the claimant can clearly hear with her left ear." R. 27.

After making the above findings, the ALJ considered whether the claimant would be able to perform any past relevant work and found that "claimant has no past relevant work." R. 27. Considering the claimant's age, education, work experience, and residual functional capacity, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform." R. 27-28.

Following these conclusions, the ALJ reached the end of the five-step process,

determined that Plaintiff was not disabled, and denied her application. R. 28.

## IV. LEGAL STANDARD

### A. Standard of Review

In reviewing a decision of the Commissioner, a district court may "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "It is not the function of a reviewing court to decide de novo whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999). Rather, the court's review is limited to "determin[ing] whether there is substantial evidence supporting the Commissioner's decision and whether the Commissioner applied the correct legal standard." *Poupore v. Astrue*, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam).

The substantial evidence standard is "even more" deferential than the 'clearly erroneous' standard. *Brault v. Social Sec. Admin*, 683 F.3d 443, 448 (2d Cir. 2012). The reviewing court must defer to the Commissioner's factual findings, and the Commissioner's findings of fact are considered conclusive if they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009) (internal quotations omitted) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "In determining whether the agency's findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal quotations omitted). "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," or

when the ALJ's rationale is unclear in light of the record evidence, remand to the Commissioner "for further development of the evidence" or for an explanation of the ALJ's reasoning is warranted. *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

**B.    Statutory Disability**

A claimant is disabled under the SSA when she or he lacks the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).  In addition, a person is eligible for disability benefits under the SSA only if:

> his physical or mental impairment or impairments are of such severity that she is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which she lives, or whether a specific job vacancy exists for him, or whether she would be hired if she applied for work.
> *Id.* § 423(d)(2)(A).

A claimant's eligibility for SSA disability benefits is evaluated pursuant to a five-step sequential analysis:

1.    The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2.    If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3.    If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, claimant has an impairment listed in Appendix 1 of the regulations.  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him disabled, without considering vocational factors such as age, education, and work experience.

4.    If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, she or he has residual functional capacity to perform

17

his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Rolon v. Commissioner of Soc. Sec.*, 994 F. Supp. 2d 496, 503 (S.D.N.Y. 2014); *see* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v), 416.920(a)(4)(i)–(v). The claimant bears the burden of proof as to the first four steps of the process. *See Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003). If the claimant proves that his impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth and final step. *See id.* At the fifth step, the Commissioner must prove that the claimant is capable of obtaining substantial gainful employment in the national economy. *See Butts v. Barnhart*, 416 F.3d 101, 103 (2d Cir. 2005); 20 C.F.R. § 404.1560(c)(2).

### C. Construction of *pro se* submissions

A *pro se* litigant's pleadings and submissions must be construed liberally and interpreted "to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).

## V. ASSESSING THE ALJ'S FINDINGS

Plaintiff's *pro se* submission is limited to a recitation of the consultative psychiatric examiner's evaluation and a request that the Court review all her mental health records. P. Mem. at 3. As requested, I have reviewed the record with a particular focus on Plaintiff's mental health issues. In the interest of interpreting the *pro se* submission to raise the strongest arguments it suggests, I consider whether the ALJ properly applied the treating physician rule, whether the ALJ properly analyzed Plaintiff's credibility, and whether post-decision evidence submitted by Plaintiff warrants remand.

## A. Treating Physician Rule

When considering the record evidence, the ALJ must give deference to the opinions of a claimant's treating physician. A treating physician's opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in . . . [the] record." 20 C.F.R. § 416.927(c)(2); *see also Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Before an ALJ can give a treating physician's opinion less than controlling weight, the ALJ should consider the following factors to determine the amount of weight the opinion should be given: (1) the length of the treatment relationship and the frequency of examination, (2) the nature and extent of the treatment relationship, (3) the medical support for the treating physician's opinion, (4) the consistency of the opinion with the record as a whole, (5) the physician's level of specialization in the area, and (6) other factors that tend to support or contradict the opinion. 20 C.F.R. § 416.927(c)(2)-(6); *Schisler v. Sullivan*, 3 F.3d 563, 567 (2d Cir. 1993). Although the foregoing factors guide an ALJ's assessment of a treating physician's opinion, the ALJ need not expressly address each factor. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (summary order) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear.") (citing *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam)). As long as the ALJ provides "good reasons" for the weight accorded to the treating physician's opinion and the ALJ's reasoning is supported by substantial evidence, remand is unwarranted. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004).

### 1. Dr. Fernando Mejia, Treating Psychiatrist at Urban Health Plan

Defendant contends that the ALJ properly declined to give controlling weight to Dr. Mejia's opinion because it conflicted with his own treatment records, Plaintiff's statements about

her daily activities, and the opinions of Dr. Mahony and Dr. Nobel. D. Mem. at 21 (citing 20 C.F.R. § 416.927(c)(2)).

On June 29, 2012, Dr. Mejia completed a psychiatric report, stating that he and SW Weille had treated Plaintiff on a monthly basis since January 2012, diagnosing borderline personality disorder, dysthymia, and finding Plaintiff had a GAF score of 56.3. R. 271. Dr. Mejia reported that Plaintiff's symptoms had improved, with very few side effects since she started taking the antidepressant, Mirtazapine. R. 271. Even so, Dr. Mejia opined that Plaintiff was "seriously limited, but not precluded" from performing unskilled, semi-skilled, and skilled work, as well as performing particular types of jobs. R. 273-74. Almost a year after his psychiatric report, on June 7, 2013, Dr. Mejia completed a medical source statement, assessing that Plaintiff had moderate limitations in her ability to understand, remember and carry out simple instructions, make judgments on simple work-related decisions, and interact appropriately with supervisors and the general public, and marked limitations in the areas of interacting with coworkers and responding appropriately to usual work situations and changes in a routine work setting. R. 278. Dr. Mejia further opined that Plaintiff's depressive and personality disorders affected her ability to socialize and interact with others on a prolonged basis in stressful situations, and that she was very easily overwhelmed emotionally, frequently tearful, easily agitated, and needed to spend a lot of time alone. R. 277-78. However, in August 2012, October 2012, December 2012, February 2013,[3] and June 2014, Dr. Mejia's examinations of Plaintiff revealed that she was doing well, cooperative, had good attention, clear and spontaneous speech, intact thought processes, unremarkable thought content, good insight and judgment, and intact

---

[3] In February 2013, Plaintiff reported to Dr. Mejia that her medication was helping her feel better. R. 550.

immediate, recent, and remote memory skills. R. 570, 579, 550, 562, 641-42.

The Social Security Regulations provide that before an ALJ awards less than controlling weight, the ALJ should consider the regulatory factors in 20 C.F.R. § 416.927(c)(2)-(6) to determine the amount of weight to award the opinion. As long as the ALJ provides "good reasons" for the weight accorded to the treating physician's opinion and the ALJ's reasoning is supported by substantial evidence, remand is unwarranted. *See Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004). However, an ALJ is not required to award controlling weight to an opinion that is inconsistent with other treatment records. *Halloran v. Barnhart* at 32-33 (Even though "the treating physician rule generally requires deference to the medical opinion of a claimant's treating physician, the opinion of the treating physician is not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.").

Here, the ALJ thoroughly analyzed Dr. Mejia's June 29, 2012 Psychiatric/Psychological Report, Dr. Mejia's June 2013 Mental Medical Source Statement of Ability to Do Work-Related Activities, and Dr. Mejia's treatment records. The ALJ noted Dr. Mejia's diagnosis of dysthymia, borderline personality disorder and depression, but noted as well that Plaintiff reported improvement with medication. R. 25. The ALJ also highlighted the portions of Dr. Mejia's findings that undermined the severity of his residual functional capacity assessment. Specifically, the ALJ explained that she was not persuaded by Dr. Mejia's "grave mental assessments ... as it is inconsistent with the treatment notes and findings from the mental status examinations in Exhibits C3F, C4F and C11F and the findings from the consultative psychiatric examination performed by Dr. Mahoney in Exhibit C5F in which Dr. Mahoney noted that the claimant's psychiatric problems do not seem to interfere with the claimant's ability to function...

[Therefore, t]he objective medical evidence does not establish that the claimant would be precluded from all work activity." R. 27 (citing Exs. C1F, C2F). The ALJ also considered the factors set forth in the Social Security Regulations: (i) Dr. Mejia's ongoing treatment relationship from June 2012 through June 2014, R. 25; (ii) the nature of Dr. Mejia's psychiatric treatment of Plaintiff; (iii) the lack of medical support in Dr. Mejia's own treatment records; and (iv) the inconsistency of Dr. Mejia's severe assessment as compared to the consultative examination findings that Plaintiff's psychiatric impairments do not interfere with her ability to function. R. 25. The ALJ thereby considered the regulatory factors in 20 C.F.R. § 416.927(c)(2)-(6).

Since an ALJ is not required to award controlling weight to a treating physician's opinion that is inconsistent with other treatment records, and the ALJ here identified various inconsistencies between Dr. Mejia's opinion, his own treatment notes and the opinion of the consultative psychiatric examiner, I find that the ALJ was not required to award controlling weight to Dr. Mejia's opinion.

Accordingly, the ALJ did not err in his application of the treating physician rule to Dr. Mejia's opinion. I respectfully recommend that remand is unwarranted on this basis.

### 2. Dr. Samuel DeLeon, Plaintiff's treating pulmonologist

Defendant contends that Dr. DeLeon opinions were largely consistent with the ALJ's residual functional capacity determination. D. Mem. at 19 (citing R. 484). Because the ALJ did not explicitly specify the weight she awarded to Plaintiff's treating pulmonologist, however, and in the interest of interpreting the *pro se* submission to raise the strongest arguments it suggests, I analyze the ALJ's treatment of Dr. DeLeon's opinion.

On August 8, 2012, Dr. DeLeon completed a Pulmonary Residual Functional Capacity Questionnaire. R. 483. Dr. DeLeon diagnosed Plaintiff with asthma with symptoms of coughing

and shortness of breath. R. 484-85. Dr. DeLeon also noted that Plaintiff would have three to four asthma attacks per year that would incapacitate her for about three to four days each time, causing her to be capable of only low stress jobs because of absences from work about two days per month due to her impairment or treatment. R. 484-85. Dr. DeLeon opined that Plaintiff could walk for three to four blocks at a time, sit for at least six hours, and stand and/or walk for about four hours during the course of an eight-hour workday, lift and carry twenty pounds occasionally and ten pounds frequently, and occasionally twist, stoop (bend), crouch/squat, climb ladders, and climb stairs. R. 484-85. Dr. DeLeon also opined that Plaintiff should avoid temperature extremes, high humidity, wetness, cigarette smoke, perfumes, soldering fluxes, solvents/cleaners, fumes, odors, gases, dust, and chemicals. R. 485.

Here, the ALJ reviewed Dr. DeLeon's Pulmonary Residual Functional Capacity Questionnaire and noted Dr. DeLeon's diagnosis of Plaintiff with asthma and Dr. DeLeon's findings of Plaintiff's resulting physical limitations. R. 23 (citing Exhibit C3F at 4-5).

Although the ALJ here did not explicitly award controlling weight to Dr. DeLeon's opinion, I find that the ALJ substantially complied with the treating physician rule by incorporating Dr. DeLeon's assessment into her residual functional capacity determination. R. 26. Apart from a minor variance (six hours versus four hours) between the ALJ and Dr. DeLeon's assessments of Plaintiff's ability to stand or walk (which, given the nearly identical assessments, may represent a scrivener's error), the ALJ adopted Dr. DeLeon's findings in full. *Compare* R. 27 ("claimant retains the residual functional capacity to perform light work, which requires lifting and/or carrying objects weighing up to 20 pounds occasionally and 10 pounds frequently, standing and/or walking up to six hours in an eight-hour workday, and sitting up to six hours in an eight-hour work day… and requires to be in a workplace with no temperature

extremes, occasional exposure to fumes and gases, no climbing ladders/ropes/scaffolds, and occasional balancing, the claimant can still perform a wide range of light work.") *with* R. 484-85 (Dr. DeLeon's opinions that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, and, sit for at least six hours, and stand and/or walk for about four hours during the course of an eight-hour workday). The ALJ also fully adopted Dr. DeLeon's recommendation that Plaintiff should avoid temperature extremes, and more than occasional exposure to fumes, odors, and gases.

Accordingly, the ALJ properly applied the treating physician rule to Dr. DeLeon's opinion. I respectfully recommend that remand is unwarranted on this basis.

### 3. Dr. Leocroft Green, Otolaryngologist

Defendant contends that the ALJ properly declined to give controlling weight to Dr. Green's opinion because it was an opinion as to the ultimate issue of disability. D. Mem. at 18 (citing 20 C.F.R. § 404.1527(d)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

In his Treating Physician's Wellness Report, dated January 13, 2010, Dr. Leacroft Green, an otolaryngologist, diagnosed Plaintiff with profound right deafness and dizziness, and recommended a behind-the-ear hearing aide. R. 412. Dr. Green's opinion was limited to finding that Plaintiff was unable to work for at least 12 months "due to disability until [she] receives hearing aide." R. 413. In a subsequent September 26, 2011 letter, Dr. Green again opined that Plaintiff's condition rendered her unable to work. R. 376.

Certain findings — including the ultimate finding of whether a claimant is disabled and cannot work — are "reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(1). "That means that the Social Security Administration considers the data that physicians provide but draws its own conclusions as to whether those data indicate disability. A treating physician's statement

that the claimant is disabled cannot itself be determinative." *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). "Reserving the ultimate issue of disability to the Commissioner relieves the Social Security Administration of having to credit a doctor's finding of disability, but it does not exempt administrative decisionmakers from their obligation ... to explain why a treating physician's opinions are not being credited." *Id.*

Dr. Green's opinion was brief and limited to a diagnosis of profound hearing loss in the right ear and the determination that Plaintiff would be unable to work until she receives the hearing aide. R. 376, 412-13. The ALJ reviewed these findings, and, as required by the Social Security Regulations, noted the nature of Plaintiff's auditory treatment with Dr. Green, the medical support for Dr. Green's opinion, R. 23 (citing Ex. C3F at 122-123), and Dr. Green's failure to acknowledge that Plaintiff still had use of her left ear. R. 27. Following this succinct analysis of Dr. Green's limited opinion, the ALJ declined to accord much weight to Dr. Green's opinion that Plaintiff was unable to work because "the issue of disability is reserved to the Administration and the claimant can clearly hear with her left ear." R. 27. Given that the ALJ considered regulatory factors before declining to award controlling weight to Dr. Green's opinion, and Dr. Green's opinion was almost entirely limited to the finding that Plaintiff would be unable to work — a finding reserved to the Commissioner — the ALJ was not obligated to give this opinion controlling weight. On this record, I find the ALJ appropriately evaluated this medical evidence.

Accordingly, I respectfully recommend that the Court find that remand is unwarranted on this basis.

**B. Credibility**

Defendant argues that substantial evidence supports the ALJ's credibility determination.

D. Mem. at 17 (citing R. 26).

While it is true that an ALJ is required to consider the plaintiff's reports of pain and other

limitations, 20 C.F.R. § 416.929, an ALJ is not required to accept the plaintiff's subjective

complaints without question. *McLaughlin v. Sec'y of Health, Educ. & Welfare*, 612 F.2d 701,

704-05 (2d Cir. 1980). In assessing Plaintiff's subjective claims of pain and other symptoms, the

ALJ must first determine whether there are "medically determinable physical or mental

impairment(s) — i.e., an impairment(s) that can be shown by medically acceptable clinical and

laboratory diagnostic techniques — that could reasonably be expected to produce the

individual's pain or other symptoms." SSR 96-7p.[4] If this has been shown, the ALJ must then

evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine

the extent to which the symptoms limit the individual's ability to do basic work activities. *Id.*

When making a credibility determination, the ALJ can consider the following factors: (1) daily

activities; (2) the location, duration, frequency, and intensity of the pain or other symptoms; (3)

precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any

medication taken to alleviate pain or other symptoms; (5) treatment, other than medication,

received for relief of pain or other symptoms; (6) any measures used to relieve pain or other

---

[4]      Effective on March 28, 2016, SSR 16-3p, 2016 SSR LEXIS 4 superseded SSR
96-7p, 1996 SSR LEXIS 4. *See* SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 28, 2016). The new
ruling eliminates the use of the term "credibility" from the SSA's sub-regulatory policy, in order
to "clarify that subjective symptom evaluation is not an examination of an individual's
character." 2016 SSR LEXIS 4, at *1. Instead, adjudicators are instructed to "consider all of the
evidence in an individual's record when they evaluate the intensity and persistence of symptoms
after they find that the individual has a medically determinable impairment(s) that could
reasonably be expected to produce those symptoms." 2016 SSR LEXIS 4, at *2. Both the two-
step process for evaluating an individual's symptoms and the factors used to evaluate the
intensity, persistence and limiting effects of an individual's symptoms remain consistent between
the two rulings. *Compare* SSR 96-7p, 1996 SSR LEXIS 4 with SSR 16-3p, 2016 SSR LEXIS 4.
As the ALJ's decision in this matter was issued before the new regulation went into effect, this
Court reviews the ALJ's credibility assessment under the earlier regulation.

symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3). An ALJ is not required to explicitly address each of the regulatory credibility factors. *Cichoki v. Astrue*, 534 Fed. App'x 71, 76 (2d Cir. 2013) (summary order). If after considering these factors the ALJ's findings "are supported by substantial evidence… the court must uphold the ALJ's decision to discount plaintiff's subjective complaints of pain." *Aponte v. Sec'y, Dep't of Health and Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984). Ultimately, the ALJ's determination of credibility is entitled to deference. *See Snell v. Apfel*, 177 F.3d 128, 135-36 (2d Cir. 1999) ("After all, the ALJ is in a better position to decide issues of credibility").

Even though an ALJ is not required to explicitly address each of the regulatory credibility factors, *Cichoki v. Astrue*, 534 Fed. App'x 71, 76 (2d Cir. 2013) (summary order), the ALJ here noted various inconsistencies between the severity of claimant's subjective complaints about her condition, her own statements about her physical activities and objective treatment records. Specifically, the ALJ contrasted Plaintiff's statements "that she had difficulty sleeping and had dizziness and needed help cleaning the bathroom and doing laundry and that [she] could not stand for a long time or walk or climb stairs or squat…" with (i) Plaintiff's statements "that she took care of her children and took them to school and was able to shop," R. 61 (internal citations omitted); (ii) Dr. David Mahony's finding that Plaintiff's condition did not interfere with her ability to function normal on a daily basis, R. 599, and (iii) Dr. Catherine Pelczar-Wissner's finding that Plaintiff did not have any physical limitations other than the need to avoid climbing ladders and respiratory irritants, R. 604. R. 24, 27. The ALJ also noted that "the claimant's performance of her activities of daily living have not been significantly impeded by either her asthma or her hearing loss." R. 64. In light of the foregoing, the ALJ's credibility determination

was supported by substantial evidence.

On this record, I recommend that the Court decline to disturb the ALJ's credibility finding.

## C. New Evidence

After the ALJ's September 30, 2014 decision, Plaintiff submitted additional treatment notes from Dr. Mejia, and a Federation Employment & Guidance Services notice dated December 12, 2012. R. 643-661. The "new" treatment notes from Dr. Mejia are substantially similar to the treatment notes the ALJ analyzed in her decision. Like Dr. Mejia's treatment notes from August 2012, October 2012, December 2012, and February 2013, R. 570, 579, 550, 562, 641-42, the treatment notes submitted after the ALJ's decision, dated October 2013, December 2013, and October 2014, note Plaintiff's depression, anxiety and trouble sleeping, yet find that she appeared well-nourished, well-groomed, cooperative, attentive, thought process intact, and insight and judgment "good." R. 646, 654, 656. Dr. Mejia's GAF score of Plaintiff also stayed at 55-56, R. 646-47, 654, 656, which is consistent with Dr. Mejia's treatment records before the ALJ. R. 271, 550, 562, 570, 579. Therefore, this evidence is cumulative of what was already in the record and would not have influenced the Appeals Council to decide Plaintiff's application differently. *Lisa v. Sec. of HHS*, 940 F.2d 40, 43 (2d Cir. 1991) (to be remanded on the basis of new evidence, plaintiff must show that the evidence is new and not merely cumulative of what is already in the record and material in that there is a reasonable possibility that the new evidence would have influenced the Secretary to decide claimant's application differently). Similarly, the Federation Employment & Guidance Services' December 12, 2012 form, which noticed that Plaintiff was exempt from the work activities of the Department of Social Service's temporary assistance program, R. 660-61, is duplicative of information that was already in the record before

the ALJ. R. 560. The form was, therefore, cumulative and would not have influenced the Appeals Council to decide the claim differently. *Lisa*, 940 F.2d 40, 43.

Accordingly, I respectfully recommend that remand is unwarranted on this basis.

## VI. CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendant's motion be **GRANTED**, and that Plaintiff's motion be **DENIED**.

Dated: August 30, 2017
White Plains, New York

Respectfully submitted,

Paul E. Davison, U.S.M.J.

## NOTICE

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days, plus an additional three (3) days pursuant to Fed. R. Civ. P. 6(d), or a total of seventeen (17) days from service of this Report and Recommendation to serve and file written objections. *See also* Fed. R. Civ. P. 6(a). Such objections, if any, along with any responses to the objections, shall be filed with the Clerk of the Court with extra copies delivered to the chambers of the Honorable Nelson S. Roman, at the Honorable Charles L. Brieant Jr. Federal Building and United States Courthouse, 300 Quarropas, Street, White Plains, New York 10601, and to the chambers of Judge Paul E. Davison at the same address.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Roman. A copy of this Report and Recommendation has been mailed to:

Mayline E. Borrero Fernandez
1015 Boynton Avenue, Apt. 4-F
Bronx, NY 10472-5728